Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| ASOCIACIÓN CÍVICA DE VILLA CAPRI, INC. Y OLGA LIZZETTE GRILLASCA<br><br>Apelantes<br><br>V.<br><br>MYRNA RODRÍGUEZ RIVERA<br><br>Apelada | KLAN202400976 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2024CV05161<br><br>Sobre: Injunction |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero y el Juez Campos Pérez.

Marrero Guerrero, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 21 de marzo de 2025.

Comparecen la Asociación Cívica de Villa Capri, Inc. (ACVC) y la señora Olga Lizette Grillasca (señora Grillasca), (en conjunto, parte apelante) y solicitan que revoquemos una *Sentencia* emitida y notificada el 11 de septiembre de 2024 por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI).[1] En esencia, mediante la referida determinación el TPI declaró No Ha Lugar la solicitud de *injuction* preliminar y permanente presentada por la parte apelante, entre otros. Tras evaluar el expediente ante nuestra consideración, confirmamos el proceder del foro recurrido. Veamos.

**-I-**

Este caso tiene su génesis en una *Demanda* sobre interdicto preliminar y permanente incoada el **6 de junio de 2024** por ACVC en contra de la señora Myrna Rodríguez Rivera (señora Rodríguez Rivera o parte apelada).[2] En síntesis, alegaron que luego de que la

---

[1] Véase, apéndice de la parte apelante, págs. 576-605.
[2] Véase, apéndice de la parte apelante, págs. 1-140.

señora Rodríguez Rivera fuese destituida como presidenta de la Junta Directiva de ACVC (Directiva), ésta continuó ejerciendo funciones y tareas como presidenta. También solicitaron que se detuviera la celebración de una Asamblea Extraordinaria pautada para el 9 de junio de 2024.

ACVC aseveró que el 25 de junio de 2023, se celebró una Asamblea de Residentes en la cual se nombraron a los miembros de la Junta.[3] Entre los miembros de la Directiva, la señora Rodríguez Rivera revalidó como presidenta, mientras que el puesto de tesorero(a) quedó vacante. Por ello, la Asamblea de Residentes delegó en la Directiva el nombramiento para el puesto de tesorero(a). A esos efectos, el 21 de agosto de 2023, la Directiva celebró una reunión ordinaria donde nombraron a la señora Evelyn Navas González (señora Navas González) como tesorera.[4]

ACVC alegó que la Directiva tuvo problemas con la señora Rodríguez Rivera luego de que esta fuese electa como presidenta. Específicamente, la parte apelante alegó que la parte apelada infringió varias disposiciones enmarcadas en el Reglamento de la Asociación (Reglamento), entre estas:

1) No ejecutó las decisiones de la Junta al imponer a la señora Mariam Latorre Rodríguez (señora Latorre Rodríguez) como tesorera, a pesar de que la Junta nombró a la señora Navas González;

2) Interfirió con la buena marcha de las actividades en la comunidad al no formalizar ni renovar contratos con diferentes personas encargadas de la seguridad y actividades recreativas de la urbanización;

3) Desautorizó a la señora Olga Grillasca (señora Grillasca), la señora Maritza Valero Ramírez (señora Valero Ramírez) y el señor Julio C. Eusebio Hernández (señor Eusebio Hernández) de sus puestos como vicepresidenta, secretaria y vocal —respetivamente— en la Directiva.

Por estas violaciones, la Directiva convocó una Asamblea Extraordinaria a celebrarse el **19 de mayo de 2024** con el fin de atender la supuesta obstaculización y usurpación de las

---

[3] Véase, apéndice de la parte apelante, págs. 21-39.
[4] Véase, apéndice de la parte apelante, págs. 40-53.

prerrogativas y funciones de los miembros de la Directiva.[5] Llegada la fecha, la Directiva celebró la Asamblea Extraordinaria donde se presentó moción para destituir a la señora Rodríguez Rivera de su puesto como presidenta. La Directiva alegó tener una mayoría de votos a favor de la destitución y por ello, el 20 de mayo de 2024, le notificó a los Socios de ACVC la separación involuntaria de la señora Rodríguez Rivera del puesto de presidenta.

No obstante lo anterior, ACVC aseveró que la señora Rodríguez Rivera convocó una Asamblea Extraordinaria a celebrarse el **9 de junio de 2024**.[6] El propósito de dicha reunión era para llenar las vacantes de vicepresidente(a), secretario(a) y vocales. Por su parte, la Directiva le solicitó a la parte apelada mediante carta del 20 de mayo de 2024 la devolución de ciertos bienes y documentos pertenecientes a la Directiva. La parte apelante alegó que a la fecha de la presentación de la demanda, la señora Rodríguez Rivera aun no entregaba la documentación y pertenencias solicitadas.

Por todo esto, la Directiva presentó la demanda de epígrafe y le solicitó al TPI que le ordenara a la señora Rodríguez Rivera no ejercer las funciones y tareas exclusivas de la presidencia de la Directiva. También solicitó que le ordenara a la parte apelada entregar los documentos y bienes pertenecientes a ACVC. De igual forma, solicitó que la señora Rodríguez Rivera le entregara a la señora Grillasca la chequera de la cuenta bancaria a nombre de ACVC. Finalmente, solicitó que se le ordenara a la parte apelante notificar la cancelación de la Asamblea Extraordinaria convocada por esta para celebrarse el 9 de junio de 2024.[7]

---

[5] Véase, apéndice de la parte apelante, págs. 124-125.
[6] Véase, apéndice de la parte apelante, págs. 126-135.
[7] El TPI emitió una Resolución y Orden en la cual proveyó No Ha Lugar la orden de entredicho por incumplir con alguno de sus requisitos. Asimismo, el TPI acortó los términos para el diligenciamiento de los emplazamientos y para que la demandada/aquí apelada presentara su contestación a demanda.

El **24 de junio de 2024**, la señora Rodríguez Rivera compareció mediante *Contestación a Demanda, Reconvención, Demanda contra Terceros y Petición de Injuction Preliminar y Permanente*.[8] En síntesis, la parte apelada negó las alegaciones sobre las violaciones al Reglamento y aseguró que ACVC no cumplió con las disposiciones reglamentarias que establecen el proceso de separación involuntaria para el puesto de presidente de la Directiva. En ese sentido, la parte apelada arguyó que la Directiva usurpó sus funciones como presidenta. Sostuvo, además, que la mayoría de los miembros de la Directiva no contaban con los requisitos necesarios para ejercer sus respectivos cargos. De igual forma, adujo que el nombramiento de la señora Navas González como tesorera fue contrario a la ley y al Reglamento.

Además, la señora Rodríguez Rivera presentó una reconvención y demanda contra terceros contra los miembros de la Directiva, la señora Grillasca, la señora Navas González, la señora Valero Ramírez, el Julio Cesar Eusebio Hernández (señor Eusebio Hernández), el señor Ángel Ortiz González (señor Ortiz González) y el señor Edgardo Mojica Maldonado (señor Mojica Maldonado) —todos en su carácter personal— (en conjunto, reconvenidos) y CONFOHOUSE, LLC (CNFOHOUSE).[9] En la misma, presentó siete causas de acción sobre daños por angustias mentales ocasionadas por las actuaciones ilegales de CONFOHOUSE y los miembros de la Directiva; incumplimiento contractual por las diversas violaciones al Reglamento; dolo contractual; daños por libelo debido a la publicación de una misiva con imputaciones falsas; violación a la Ley General de Corporaciones; acción para correr el velo corporativo

---

[8] Véase, apéndice de la parte apelante, págs. 144-200.
[9] CONFOHOUSE, LLC es una compañía de responsabilidad limitada con fines s de lucro autorizada para hacer negocios en Puerto Rico, y su agente residente, es el Sr. Julio César Eusebio Hernández. La compañía es titular de la propiedad que el Sr. Julio César Eusebio Hernández representa en la ACVC, Inc.

de ACVC, Inc. y finalmente, solicitó la determinación de temeridad y la imposición de costas y honorarios de abogados.

Asimismo, solicitó un *injuction* preliminar y permanente contra CONFOHOUSE y los miembros de la Directiva. Arguyó que el Reglamento no contempla la usurpación de los puestos por lo que, su destitución era contraria a la ley y el Reglamento. Por todo esto, la señora Rodríguez Rivera solicitó la expedición de los remedios interdictales y declaratorios para que el TPI determinara que tanto la Asamblea Extraordinaria del 19 de mayo de 2024 y como los nombramientos resultantes de dicha asamblea eran ilegales. De igual forma, le solicitó al foro de instancia determinar que la renuncia de la señora Latorre Rodríguez no se configuró y que la propia señora Rodríguez Rivera aún era la presidenta de la ACVC, con todas las facultades del puesto según dispuesto en el Reglamento.

Luego de varios tramites procesales, el **9 de julio de 2024**, la señora Grillasca, la señora Navas González, la señora Valero y el señor Eusebio Hernández presentaron su *Réplica a Reconvención.*[10] En esencia, los reconvenidos negaron muchas de las alegaciones presentadas por la parte apelada. De otro lado, alegaron afirmativamente otros asuntos, entre ellos la vacante para el puesto de tesorero(a) y que la señora Latorre Rodríguez no era la tesorera de la Directiva.

El **30 de julio de 2024**, la señora Rodríguez Rivera presentó una *Solicitud de Sentencia Sumaria.*[11] En resumen, la parte apelada solicitó la desestimación de los remedios interdictales presentados por la parte apelante en su contra. Arguyó que ni la ley ni el Reglamento le concedían legitimación activa a la parte apelante para incoar el recurso de epígrafe. Inclusive, argumentó que la parte

---

[10] Véase, apéndice de la parte apelante, págs. 335-341.
[11] Véase, apéndice de la parte apelante, págs. 350-436.

apelante no cumplió con los requisitos de los remedios interdictales que solicita. No obstante, la señora Rodríguez Rivera arguyó que sí procedían los remedios solicitados por ella debido a que, contrario a la parte apelante, ella sí tenía legitimación activa para reclamar conforme al Reglamento y la Ley General de Corporaciones por ser la presidenta de la Directiva. Por su parte, ACVC no presentó su oposición a la *Solicitud de Sentencia Sumaria.*

Por su parte, el señor Ortiz González y el señor Mojica Maldonado presentaron una *Solicitud de Desestimación* el **20 de agosto de 2024**.[12] En esencia, expusieron que ninguno de los dos formaba parte de la Directiva vigente. Por ello, alegaron que la señora Rodríguez Rivera los insertó en el pleito de epígrafe de forma temeraria. Alegaron, además, que ellos no figuraban en la prueba documental bajo la cual se les incluyó en la causa de acción por libelo. De manera que, negaron ser responsables por los alegados daños que la señora Rodríguez Rivera sufrió. Finalmente, arguyeron que no se les podía imponer responsabilidad por la totalidad ni por parte de las reclamaciones hechas contra la parte apelante.

Oportunamente, el **5 de septiembre de 2024**, la señora Rodríguez Rivera presentó su *Oposición a Solicitud de Desestimación.*[13] Sostuvo que el TPI debía rechazar de plano la solicitud de los señores Ortiz González y Mojica Maldonado por haberse presentado fuera del término establecido. Arguyó, además, que tanto el señor Ortiz González como el señor Mojica Maldonado fueron demandados en su carácter personal y no como miembros de la Directiva. En ese sentido, alegó que los señores Ortiz González y Mojica Maldonado incurrieron en varias violaciones tanto a distintas leyes como al Reglamento y que ello no suponía que estos tuvieran que ser miembros de la Directiva para responder civilmente.

---

[12] Véase, apéndice de la parte apelante, págs. 437-441.
[13] Véase, apéndice de la parte apelante, págs. 442-447.

Examinados los planteamientos esbozados, el TPI emitió una *Sentencia* el **11 de septiembre de 2024** donde formuló las siguientes determinaciones de hechos:[14]

1) **La Asociación Cívica de Villa Capri, Inc. es una corporación sin fines de lucro organizada en el Estado Libre Asociado de Puerto Rico activa bajo el número 3937 registrada allá para el 18 de agosto de 1965.**

2) **En virtud de la "Resolución Núm. 68, serie 1993-1994", se aprobó el control de acceso en la Urbanización Villa Capri en el Municipio de San Juan.**

3) El 8 de septiembre de 2010 el Municipio de San Juan aprobó la Resolución Núm. 9 serie 2010- 2011 para Enmendar la "Resolución Número 68, serie 1993-1994" que Autoriza el Control de Acceso en la Urbanización Villa Capri en el Municipio de San Juan; y otros fines.

4) La Sra. Grillasca es mayor de edad, soltera, empleada y vecina de San Juan PR. Su dirección postal es Verona #558, Villa Capri, San Juan, 00924.

5) La Sra. Navas González es mayor de edad, casada, empleada y vecina de San Juan PR. Su dirección postal es Siracusa B-1, Villa Capri, San Juan, 00924.

6) La Sra. Maritza Valero es mayor de edad, casada, empleada y vecina de San Juan PR. Su dirección postal es Catania #1175, Villa Capri, San Juan, 00924.

7) El Sr. Ángel Ortiz González es mayor de edad, soltero, retirado y vecino de San Juan PR. Su dirección postal es Verona #1180, Villa Capri, San Juan, 00924.

8) El Sr. Julio César Eusebio Hernández es mayor de edad, casado, empleado y vecino de San Juan PR. La dirección postal del Sr. Julio César Eusebio Hernández es Verona #1188, Villa Capri, San Juan, 00924.

9) CONFOHOUSE, LLC es una compañía de responsabilidad limitada con fines de lucro autorizada para hacer negocios en Puerto Rico bajo el número 451191. Su dirección postal es VALLE ARRIBA HEIGHTS, W-1 CALLE JOBO, CAROLINA, PR, 00983 y su agente residente, el Sr. Julio César Eusebio Hernández.

10) La corporación CONFOHOUSE, LLC es la titular de la propiedad que el Sr. Julio César Eusebio Hernández representa en la Asociación.

11) El Sr. Edgardo Mojica Maldonado es mayor de edad, casado, retirado y vecino de San Juan PR. Su dirección postal es Catania #1173, Villa Capri, San Juan, 00924.

12) La Sra. Myrna Rodríguez Rivera es mayor de edad, soltera, retirada y vecina de San Juan PR. Su dirección postal Verona #1179, Villa Capri, San Juan 00924.

13) **El Reglamento de la Asociación es un documento vinculante para todos los socios y/o miembros de la Asociación.** (Énfasis suplido).

---

[14] Véase, apéndice de la parte apelante, págs. 575-605.

14) Según el Reglamento de la ACVC, Inc., los socios de la ACVC, Inc., son los propietarios o inquilinos de Villa Capri, Villa Capri Courts o Caprivilas.

15) **El Reglamento pauta que los sectores de Villa Capri, Villa Capri Courts o Caprivilas están incluidos en el concepto urbanización cada vez que se menciona a lo largo del Reglamento.**

16) La sección 1 del Art. III del Reglamento establece que "[l]a matricula de esta ACVC, Inc., estará compuesta por todos los propietarios (titulares) o inquilinos que acrediten fehacientemente residir en la Urbanización".

17) **La sección 1 del Art. IV del Reglamento de la ACVC, Inc., dispone los requisitos de elegibilidad necesarios para ocupar un puesto directivo en la Asociación, siendo estos: (a) ser un inquilino que acredite fehacientemente residir en la Urbanización por los últimos 5 años previos a la elección; (b) ser mayor de edad y estar dispuesto a cumplir por el término de dos (2) años con toda responsabilidad del cargo en la Directiva; (c) estar al día con la Cuota de Mantenimiento desde que la ACVC, Inc., asumió el Control de Acceso de la Urbanización; (d) leer, respetar y observar que se cumpla con el Reglamento.** (Énfasis suplido).

18) Por otro lado, la sección 3 del Art. IV del Reglamento de la ACVC, Inc., crea un orden de jerarquía o importancia del cargo entre los socios de la Directiva, siendo este el siguiente:
    Presidente (a)
    Vicepresidente (a)
    Secretario (a)
    Tesorero (a)
    Vocales- tres (3)
    Presidente Inmediato.

19) **La sección 3 del Art. IV del Reglamento de la ACVC, Inc., pauta los derechos de los miembros de la Directiva, y establece que "tendrán derecho a voz y voto, EXCEPTO el Presidente Inmediato".** (Énfasis suplido).

20) **Además, la sección 4 del Art. IV del Reglamento de la ACVC, Inc., establece que "[t]odo Socio de la Directiva electa ocupara su cargo por el termino de dos (2) años, hasta la siguiente Asamblea Ordinaria y/o hasta que su sucesor sea nombrado".** (Énfasis suplido).

21) Por su parte el Art. V del Reglamento de la ACVC, Inc., establece los deberes y derechos de la Directiva.

22) Entre los deberes y derechos que establece el Art. V se encuentran, entre otros: (1) velar por el cumplimiento de los objetivos de la ACVC, Inc., el Reglamentos y la Ley de Corporaciones de Puerto Rico, entre otras leyes; (2) requerirle en cualquier momento al Tesorero la preparación de los estados financieros; (3) Convocar aquellas Asambleas Ordinaria y Extraordinaria que establece el Reglamento; (4) Consultar en Asamblea todo proyecto o trabajo que requiera un gasto en exceso de cinco mil uno ($5,001.00) dólares que no haya sido desglosado en el presupuesto anual aprobado por la Asamblea; (5) la jurisdicción y supervisión de los asuntos y actividades y eventos de la ACVC, Inc., por parte de los Directivos que estén en pleno goce de sus derechos como residente; (6) todas las decisiones efectuadas por la

Directiva serán válidas, salvo que sean modificadas por la mitad mas uno de los votantes, de la Directiva y/o de las Asambleas; y (7) la Directiva estará cubierta por un seguro fiduciario.

23) De igual forma el Art. V del Reglamento dispone los deberes del Presidente(a), siendo estos deberes, entre otros: (1) será jefe ejecutivo de la ACVC, Inc., responsable de la supervisión general, dirección de los asuntos, encargado de la buena marcha de las actividades y responsable de ejecutar las decisiones y resoluciones de la Directiva; (2) presidirá las reuniones de la Directiva y las Asambleas de la ACVC Inc.; (3) coordinar con el Secretario(a) para las reuniones de la Directiva y de las Asambleas; (4) firmar toda acta o documento de la Asamblea o que por su naturaleza corresponda firmar junto al Secretario(a) y firmara con el Tesorero(a) todo cheque, contratos, acuerdos y otros documentos oficiales de la ACVC, Inc.; (5) aprobar todo servicio y/o trabajo que requiera el pago con fondos de la ACVC, Inc.; (6) entregar mediante recibo los libros, actas, documentos, expedientes y archivos a su sucesor tan pronto este sea electo y asuma su cargo; (7) llenar las vacantes que surjan con la aprobación de la Directiva; asegurarse que las elecciones se realicen según lo establecido en el Reglamento.

24) Similarmente el Art. V le designa al Vicepresidente(a) las siguientes funciones, entre otras: (1) asistir al Presidente para el mejor descargue de las funciones; (2) desempeñar todos los deberes del presidente en ausencia de este, incapacidad, enfermedad, renuncia, remoción de este, incapacidad, enfermedad, renuncia, remoción del cargo o por muerte, o cuando le sean delegadas expresamente tales funciones; (2) desempeñar todos los deberes que le asigne el Presidente con la aprobación de la Directiva y/o ACVC, Inc.

25) Por otro lado, el Art. V del Reglamento delimita los deberes del Secretario(a) bajo las siguientes deberes y responsabilidades: (1) firmar y notificar convocatorias a reuniones de la Directiva y Asambleas; (2) asistir a las reuniones de la Directiva y las Asambleas y escribir actas de las mismas y llevara el libro de actas; (3) firmar con el Presidente las actas y aquellos otros documentos que la Directiva o el Presidente le autorice o requiera y certificará cualquier resolución de la directiva cuando ello fuere necesario; (4) notificar las decisiones de la Directiva que por su naturaleza deben ser notificadas a las personas naturales y o jurídicas interesadas; (5) verificar y certificar el cómputo de votaciones el quórum de reuniones de Directiva y en las Asambleas; (6) preparar junto al Presidente la orden del día (agenda) de las reuniones de la directiva y de la Asambleas; (7) leerá y mantendrá un registro de las actas de las decisiones de todas las Asambleas y reuniones de la Directiva.

26) Por último, el Art. V dispone los deberes del Tesorero(a), siendo estos entre otros: (1) llevar un sistema de contabilidad adecuado de todas la transacciones financieras de la ACVC, Inc.; (2) preparar el presupuesto anual de la Asociación; firmar en con el Presidente y/o Vicepresidente o la persona designada en caso de ausencia del Presidente o Vicepresidente, todos los cheques y otros documentos oficiales de la ACVC, Inc., en ausencia del Tesorero firmara los cheques el Presidente o Vicepresidente o aquellos designados; verificar que los pagos que se autoricen sean conforme al presupuesto general de ingresos y egresos de la ACVC, Inc.; llevar libros de ingresos y egresos de la ACVC,

Inc., y conservar los libros de la Asociación; someter a la Directiva y a la ACVC Inc., un estado financiero; permitir en cualquier momentos la inspección de los libros.

27) **En la sección 1 del Art. VI del Reglamento pauta lo siguiente respecto a la separación involuntaria de los Socios de la Directiva:**
    **En cualquier Asamblea Ordinaria o Extraordinaria debidamente convocada y constituida se podrá sustituir a un socio de la Directiva mediante justa causa contando además con el voto mayoritario de los presentes. El sucesor de dicho Socio removido podrá ser electo en esta misma Asamblea. El mismo no tendrá que ser de la Directiva.** (Énfasis suplido).

28) En la sección 2 del Art. VI del Reglamento dispone lo siguiente:
    En caso de que la directiva o alguno de sus actuales o anteriores socios sean demandados en algún asunto en sus gestiones oficiales de la Directiva, los gastos legales, etc. impuesto contra ellos que no sean cubiertos por las pólizas de responsabilidad pública vigente serán cubiertos por la ACVC, Inc. Salvo cuando el procedimiento sea por apropiación ilegal de dinero o propiedad de la ACVC, Inc. La ACVC, Inc. lo demandará para conseguir la devolución de los mismos.

29) La sección 7(c) del Art. VII establece que "[t]odo cheque o retiro de las cuentas bancarias de esta ACVC, INC. será firmado por dos (2) de los siguientes: Presidente(a), Vicepresidente(a), Secretario(a) o Tesorero(a)".

30) Por su parte la sección 8 del Art. VII dispone que
    La Directiva es responsable de realizar los análisis comparaciones y cómputos correspondientes antes de decidir incurrir en gastos algunos. La Directiva autorizará que se incurra en gastos ordinarios necesarios mediante votación por la mayoría simple de los socios de la directiva.

31) La sección 9 del Art. VII establece como gastos ordinarios y necesarios como
    A. Compañía de Seguridad
    B. Mantenimiento de áreas verdes y comunales
    C. Pólizas de Seguros
    D. Utilidades (AAA, AEE, teléfono y otras)
    E. Equipo, materiales operacionales y administrativos
    F. Reparaciones
    G. Compañía o Agencia de cobro de cuotas (si aplica).

32) La sección 1 del Art. VIII establece el proceso para cubrir las vacantes en la Directiva, al disponer que **"[l]as vacantes se llenaran en orden de jerarquía o importancia del cargo por otro Socio de la Directiva"**.(Énfasis en el original).

33) En lo referente a la vacante del puesto de Presidente la sección 2 del Art. VIII establece que **"[s]i por alguna razón el Presidente no pudiese realizar o no realizara debidamente a juicio de la directiva y o de la asamblea las funciones de su cargo o en caso de quedar vacante el vicepresidente asumirá la presidencia por igual autoridad por el resto del término"**. (Énfasis en el original).

34) Por otro lado, en lo tocante a las vacantes de los puestos de Secretario o Tesorero la sección 4 del Art. VIII dicta que "[l]as vacantes del (la) Secretario(a) y/o Tesorero(a) se cubrirán por la Directiva designando nuevos Socios en estos cargos".

35) La sección 1 del Art. IX establece que "[l]a primera reunión de la Directiva electa será no más tarde de 15 días calendario después de las elecciones será responsabilidad del presidente recién electo convocar a la nueva directiva al presidente inmediato indicando el lugar fecha y hora de la reunión con el fin de propiciar una transición ordenada…".

36) También la anterior sección regula todo lo concerniente a las reuniones ordinarias y extraordinarias de la Directiva.

37) De otro lado, la sección 2 del Art. IX establece que las Asambleas Ordinarias de los socios de la ACVC, Inc., se celebraran anualmente en el mes de marzo en el lugar y hora que determine la Directiva. A su vez dispone la misma sección que las Asambleas Extraordinarias "se realizaran cuando la evaluación de uno o hasta un máximo de tres (3)" asuntos sean necesarios.

38) Cónsono con lo anterior la sección 5 del Art. IX dispone el asunto de las convocatorias de las Reuniones Ordinarias y Extraordinarias de la Directiva y las convocatorias sobre las Asambleas Ordinarias o Extraordinarias.

39) Las convocatorias de las Reuniones Ordinarias de la Directiva "serán firmadas por el Presidente, Secretario o su representante, serán convocadas con ocho (8) días calendario de antelación y serán comunicadas por internet, teléfono o entregadas casa por casa según las circunstancias de cada socio de la Directiva".

40) Las convocatorias de las Reuniones Extraordinarias de la Directiva "serán firmadas por el Presidente, Secretario o su representante, serán convocadas con cinco (5) días calendario de antelación y serán comunicadas por internet, teléfono o entregadas casa por casa según las circunstancias de cada socio de la Directiva".

41) Las convocatorias de las Asambleas Ordinarias o Extraordinarias "serán firmadas por el Presidente, Secretario o su representante, serán convocadas con quince (15) días calendario de antelación y serán comunicadas por internet, teléfono o entregadas casa por casa.

42) La sección 1 del Art. X se establece que el quorum para las Asambleas Ordinarias o Extraordinarias "estará constituido por la mayoría simple de todos los socios con derecho al voto".(Énfasis suplido).

43) Además, "[t]ranscurrida una hora después de la hora citada los socios presentes con derecho al voto constituirán el quórum. Las decisiones y/o transacciones avaladas por el quórum constituido serán acatadas por todos los socios de la ACVC, Inc., y se aceptarán que las mismas son mayoritarias y tienen carácter democrático".

44) A su vez la sección 2 del Art. X estatuye que [e]l quórum para las reuniones ordinarias o extraordinarias de la directiva estará constituido cuando estén presentes la mayoría simple de los socios de la directiva. Entiéndase cuatro (4) de los siete (7). Por lo que se podrán hacer decisiones o efectuar las transacciones que sean necesarias las votaciones se decidirán por mayoría simple o sea 3 votos mínimos.

45) La señora Lizette Colón fue secretaria de la pasada directiva de la ACVC, Inc. desde el 2020 hasta en o alrededor del 13 de junio de 2023.

46) El 9 de junio de 2023 se emitió una carta en la cual se hacía una Convocatoria a la Asamblea Ordinaria para el domingo, 25 de junio de 2023 a las 1:00 p.m. de todos los socios de la Urbanización Villa Capri, Capri Court y Caprivilas. La carta fue firmada por la Sra. Myrna Rodríguez, quien se identifica como la Presidenta de la Directiva de la ACVC, Inc.

47) La Convocatoria de la Asamblea Ordinaria del 25 de junio de 2023 fue presentada con 16 días de anticipación a la fecha de la Asamblea Ordinaria de conformidad con el Reglamento de la ACVC, Inc.

48) La Asamblea Ordinaria de 25 de junio de 2023 se celebró en la fecha que fuera originalmente convocada; a saber, el 25 de junio de 2023.

49) En la Asamblea Ordinaria de 25 de junio de 2023 se eligieron los siguientes puestos de la Directiva: (1) Myrna Rodríguez-Presidente; (2) Olga Grillasca- Vicepresidente; (3) Maritza Valero- Secretaria; (4) Ángel Ortiz- vocal; (5) Ángel Ortiz González-vocal y (6) Julio Eusebio Hernández- vocal.

50) Los socios de la ACVC, Inc., presentes en la Asamblea Ordinaria del 25 de junio de 2023 delegaron en la Directiva la selección de una persona para el puesto de tesorero.

51) Una vez electa la nueva Directiva de la ACVC, Inc., en la Asamblea Ordinaria el 25 de junio de 2023, la fecha límite para celebrar la primera reunión de la Directiva era el lunes, 10 de julio de 2024 de conformidad con la sección 1 del Art. IX del Reglamento.

52) El 12 de julio de 2023 se llevó a cabo la primera reunión de la Directiva de la Asociación.

53) Existe una Minuta de la reunión de 12 de julio de 2023.

54) **La Minuta de la reunión de 12 de julio de 2023 no identifica a la Sra. Evelyn Navas, ni a la Sra. Mariam Latorre Rodríguez como miembro de la Directiva en calidad de Tesorera.** (Énfasis suplido).

55) En la reunión de 12 de julio de 2023 la Sra. Navas no estuvo presente.

56) El 21 de agosto de 2023 se llevó a cabo una segunda reunión de Directiva, de la cual se produjo una minuta.

57) **En la reunión de 21 de agosto de 2023 el Sr. Ángel Ortiz González renuncia a su puesto como vocal de forma oral.** (Énfasis suplido).

58) La renuncia del Sr. Ángel Ortiz González a su puesto como vocal fue aceptada por los socios de la Directiva.

59) Según el borrador de la Minuta de la Reunión de Directiva con fecha de 21 de agosto de 2023, estuvieron presentes en la reunión los miembros de la Directiva — la Sra. Rodríguez Rivera (Presidenta), la Sra. Grillasca Reyes (Vicepresidenta), la Sra. Valero Ramírez (Secretaria), el Sr. Ortiz Gonzalez (Vocal), y el Sr. Eusebio Hernández (Vocal)— con excepción del vocal el Sr. Ángel Ortiz residente de la calle Catania núm. 1161. Además, estuvieron presentes en la reunión los vecinos: el Sr. Julio Vergne Vargas, el Sr. Edgardo Mojica

Maldonado, la Sra. Yolanda Vélez Ruiz, y la Sra. Evelyn Navas Gonzalez.

60) El 11 de septiembre de 2023, la Secretaria Maritza Valero Ramírez envió un correo electrónico recordando una reunión de Directiva pautada para el lunes 18 de septiembre de 2023, a las 6:00 p.m. en el Centro Comunal de Villa Capri a las siguientes personas: a la Sra. Myrna Rodríguez Rivera, a la Sra. Olga Lizette Grillasca Reyes, a la Sra. Evelyn Navas Gonzalez, al Sr. Eusebio Hernández, a la Sra. Yolanda Vélez Ruiz, al Sr. Julio Vergne, al Sr. Eduardo Mojica Maldonado y al Sr. Ángel Ortiz. En el correo electrónico no se incluyo la agenda de la mencionada reunión del 18 de septiembre.

61) El 12 de septiembre de 2023, la Secretaria Maritza Valero Ramírez envió un correo electrónico a la Presidenta Myrna Rodríguez Rivera solicitándole la agenda de la reunión de Directiva pautada para el lunes 18 de septiembre de 2023.

62) En o antes del 17 de septiembre de 2023, la Presidenta Rodríguez Rivera convoca una Reunión de Directiva Extraordinaria para el lunes, 25 de septiembre de 2023.

63) La anterior convocatoria para la reunión de Directiva del 25 de septiembre de 2023 fue notifica por la Secretaria Valero Ramírez mediante correo electrónico a las siguientes personas: a la Sra. Myrna Rodríguez Rivera, a la Sra. Olga Lizette Grillasca Reyes, a la Sra. Evelyn Navas Gonzalez, al Sr. Eusebio Hernández, a la Sra. Yolanda Vélez Ruiz, al Sr. Julio Vergne, al Sr. Eduardo Mojica Maldonado y al Sr. Ángel Ortiz.

64) El 25 de septiembre de 2023 se llevó a cabo la tercera reunión de Directiva, de la cual se produjo una minuta.

65) La Reunión de Directiva con fecha del 25 de septiembre de 2023 fue de naturaleza extraordinaria.

66) En la reunión de 25 de septiembre de 2023 se reconoció que no procedía la ocupación a los puestos de vocal por los señores Vergne Vargas y Mojica Maldonado. Además, el Sr. Julio Vergne estuvo presente en la reunión de 25 de septiembre de 2023.

67) El contrato del Sr. Ortíz como administrador de las canchas de tenis no fue entregado a la Sra. Myrna Rodríguez.

68) En la Reunión de Directiva del 25 de septiembre de 2023 aun existía controversia respecto a quien ocuparía el puesto de tesorero en la Directiva de la ACVC, Inc.

69) La Secretaria de la Directiva de la ACVC, Inc., Maritza Valero Ramírez envió un correo electrónico el 25 de octubre de 2023, a la Sra. Rodríguez Rivera, a la Sra. Grillasca Reyes, a la Sra. Navas Gonzalez, al Sr. Eusebio Hernández y a la Sra. Yolanda Vélez Ruiz, indicándole que le enviaba como archivo adjunto el borrador de la minuta de la reunión del 25 de septiembre de 2023 y la propuesta de agenda para la próxima reunión.

70) El 30 de octubre de 2023 se llevó a cabo una cuarta reunión de Directiva de la Asociación, en donde la Sra. Navas solicitó se convocara una Asamblea para la selección del puesto de Tesorera.

71) Existe una Minuta de la reunión de 30 de octubre de 2023.

72) El 7 de noviembre de 2023, la Secretaria Maritza Valero Ramírez envió un correo electrónico en el cual adjunto el borrador de la Agenda propuesta para la reunión de Directiva pautada para el lunes 13 de noviembre de 2023, notificada el 30 de octubre de 2023 a las siguientes personas: a la Sra. Myrna Rodríguez Rivera, a la Sra. Olga Lizette Grillasca Reyes, a la Sra. Evelyn Navas Gonzalez, y al Sr. Eusebio Hernández.

73) El sábado, 11 de noviembre de 2023 la Presidenta Rodríguez Rivera notifico la convocatoria a la Reunión Extraordinaria del 15 de noviembre de 2023, a la vicepresidenta Grillasca Reyes y a la Secretaria Valero Ramírez, sin notificarle al Sr. Eusebio Hernández de esta.

74) El 14 de noviembre de 2023 la vicepresidenta Grillasca Reyes, la secretaria Valero Ramírez y el vocal Eusebio Hernández enviaron una misiva a la Presidenta de la Directiva de la ACVC, Inc., en donde se trajo a colación un patrón en el cual la Presidenta recalendarizaba las reuniones ordinarias de la Directiva pautadas, y a su vez cambiaba la naturaleza de estas a reuniones extraordinarias, menoscabando así las reuniones ordinarias de la Directiva ya establecidas.

75) A partir del 14 de noviembre de 2023, el Sr. Eusebio Hernández no fue incluido en las comunicaciones vía correo electrónico referentes a las Reuniones de la Directiva.

76) El 15 de noviembre de 2023 a las 6:00 p.m. en el Centro Comunal de Villa Capri se celebró una Reunión Extraordinaria de Directiva en la que asistieron la Sra. Rodríguez Rivera, la Sra Mariam Latorre y el Lcdo. Joel Cotto Gómez.

77) A la mencionada Reunión Extraordinaria del 15 de noviembre de 2023 no asistieron las siguientes personas: (1) la Sra. Olga Lizette Grillasca, (2) la Sra. Maritza Valero y (3) el Sr. Eusebio Hernández.

78) La Acta de la Reunión Extraordinaria 15 de noviembre de 2023 registra a las tres personas anteriormente mencionadas con sus respectivos puestos en la Directiva como ausentes siendo estos puestos, presidenta, secretaria y vocal.

79) En el mes de diciembre de 2023 no se convocaron reuniones de Directiva de la ACVC, Inc.

80) Se entregó una carta informativa con fecha de 10 de enero de 2024 a la Urbanización. En dicha carta se atendieron los siguientes asuntos: (a) Responsabilidad de la Junta por posibles demandas legales; (b) Notificación de vacantes en la Directiva; (c) Convocatoria para Asambleas y Continuación de servicios y (d) Administrador de las Áreas Recreativas.

81) La anterior carta informativa de 10 de enero de 2024 presenta como vacantes los siguientes puestos en la Directiva: vicepresidencia, secretaria y tres (3) plazas de vocales.

82) La Presidenta Rodríguez Rivera mediante carta informativa con fecha del viernes, 17 de mayo de 2024 convocó a los socios de la ACVC, Inc., para celebrar el domingo, 9 de junio de 2024 una Asamblea Extraordinaria. En la agenda se

propuso en su inciso núm. 4 llenar los puestos vacantes en la Directiva siendo estos: (1) vicepresidencia, (2) secretaria y (3) vocales (tres puestos).

83) Para en o antes del 23 de mayo de 2024 se repartió la convocatoria para la Asamblea Extraordinaria a celebrarse el 9 de junio de 2024 a los vecinos de la Urbanización.

84) La vicepresidenta Grillasca y la secretaria Valero Ramírez convocaron a la comunidad a una Asamblea Extraordinaria el domingo, 19 de mayo de 2024. En la convocatoria se compartió la agenda de la Asamblea Extraordinaria la cual contenía entre otros asuntos la separación involuntaria de la presidenta.

85) La convocatoria de la Asamblea Extraordinaria del 19 de mayo de 2024 no se notificó a todos en la Urbanización, según lo define el Reglamento. La convocatoria no fue notificada a los vecinos de Villa Capri Courts y Caprivilas.

86) La comunidades de Villa Capri y Caprivilas totalizan al menos 46 unidades con posible derecho al voto.

87) En la carta de 12 de junio de 2024 la Sra. Grillasca solicitó, además, la entrega inmediata de la chequera y toda la información financiera de la Asociación, incluyendo, pero no limitándose a los estados bancarios y los informes contables correspondientes durante la incumbencia de la Sra. Myrna Rodríguez como Presidenta de la Asociación.

Luego de analizar los planteamientos de las partes a la luz del derecho aplicable, el TPI declaró No Ha Lugar la solicitud de *injuction* preliminar y permanente presentado por ACVC. De igual modo, declaró No Ha Lugar la reconvención presentada por la señora Rodríguez Rivera. Por otro lado, declaró Ha Lugar la moción de desestimación presentada por los señores Ortiz González y Mojica Maldonado.

Sobre la solicitud de ACVC, el TPI razonó que el puesto de tesorero(a) no quedó vacante solo porque la señora Latorre Rodríguez expresara su desinterés en continuar con dicho puesto ya que, el Reglamento disponía en la sección 4 del Art. IV del Reglamento "*[t]odo Socio de la Directiva electa ocupara su cargo por el termino de dos (2) años, hasta la siguiente Asamblea Ordinaria y/o hasta que su sucesor sea nombrado*". El TPI explicó que del expediente no surgió prueba que demostrara que la Directiva celebró una Asamblea Ordinaria o Extraordinaria en la que nombró al sucesor de la señora Latorre Rodríguez. El TPI tampoco encontró

prueba que demostrara que dicho sucesor asumió el cargo de tesorero. Por ello, el foro de instancia determinó que la señora Latorre Rodríguez era la tesorera de ACVC hasta que se celebrara una Asamblea Ordinaria o Extraordinaria conforme a las disposiciones del Reglamento.

En cuanto a la destitución de la señora Rodríguez Rivera del puesto de presidenta, el TPI determinó que aun cuando existía justa causa para la separación involuntaria, la parte apelante no demostró mediante prueba documental o de otro tipo que la Asamblea Extraordinaria del 19 de mayo de 2024 cumplió con todos los requisitos establecido en la sección 1 del Art. VI del Reglamento. Esto es, que la separación involuntaria surja de una Asamblea Ordinaria o Extraordinaria debidamente convocada y constituida junto al voto mayoritario de los presentes.

Además, el TPI expresó que la parte apelante nunca presentó su oposición a la Moción de Sentencia Sumaria presentada por la señora Rodríguez Rivera a pesar de habérsele advertido sobre ello.[15] De manera que, no presentó prueba que controvirtiera los hechos incontrovertidos propuestos por la parte apelada. Ante este cuadro, el TPI determinó que la separación involuntaria de la señora Rodríguez Rivera del puesto de presidente fue invalida. Por ello, la parte apelada continuaba siendo la presidenta de la ACVC, hasta que se celebre una Asamblea Ordinaria o Extraordinaria conforme a las disposiciones de Reglamento. El TPI razonó que solo así, se podría sustituir o separar involuntariamente a la señora Rodríguez Rivera de su puesto.

Inconforme con la determinación del TPI, la parte apelante solicitó la reconsideración del foro sentenciador. Este último declaró No Ha Lugar la solicitud.

---

[15] Entrada Núm. 40 de SUMAC, *Resolución y Orden* de 3 de julio de 2024.

Insatisfecha aun, la parte apelante acude ante nos y alega que el TPI incidió de las siguientes maneras:

**ERRÓ EL TRIBUNAL DE INSTANCIA AL INTERPRETAR QUE LAS COMUNIDADES DE VILLA CAPRI COURT Y CAPRIVILLAS SON SOCIOS DE LA ASOCIACIÓN DE VILLA CAPRI, CORP CON DERECHO A SER CONVOCADAS A LA REUNIÓN**

**ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL NO CELEBRAR VISTA EVIDENCIARIA EN EL PRESENTE CASO Y RESOLVER EL MISMO SIN QUE LA PARTE DEMANDANTE HUBIESE TENIDO ACCESO A LA GRABACIÓN DE LA REUNION DONDE RENUNCIO LA TESORERA SOLICITIADA MEDIANTE MOCIÓN.**

La señora Rodríguez Rivera compareció oportunamente. Contando con la comparecencia de las partes, procedemos a resolver.

**-II-**

-A-

La sentencia sumaria es un mecanismo procesal que permite que un caso se disponga ágilmente, sin la celebración de un juicio, siempre que no se presenten controversias genuinas de hechos materiales. *Cruz, López v. Casa Bella y otros,* 2024 TSPR 47, 213 DPR 980 (2024); *Birriel Colón v. Econo y otro,* 2023 TSPR 120, 213 DPR 80 (2023); *Segarra Rivera v. Int'l. Shipping et al.,* 208 DPR 964, 979 (2022); *SLG Fernández-Bernal v. RAD-MAN et al.,* 208 DPR 310, 334 (2021). A esos efectos, un hecho material es uno esencial y pertinente, que puede afectar el resultado de la reclamación conforme al derecho sustantivo aplicable. *Cruz, López v. Casa Bella y otros, supra; Banco Popular v. Posada,* 2024 TSPR 62, 213 DPR ___ (2024); *Ramos Pérez v. Univisión,* 178 DPR 200, 213 (2010); véase, además, Regla 36.1 de Procedimiento Civil, *supra,* R. 36.1. A su vez, la controversia sobre el hecho material debe ser real. *Ramos Pérez v. Univisión, supra.* En otras palabras, debe ser de calidad suficiente para que el juzgador dirima por virtud de un juicio plenario. *Íd.*

Cónsono con lo anterior, la Regla 36.3(e) de Procedimiento Civil, *supra,* R. 36.3 (e), establece que procede dictar una moción de sentencia sumaria si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas u otra evidencia demuestran que no existe una controversia real sustancial en torno a un hecho esencial y pertinente. Véase, además, *Birriel Colón v. Econo y otro, supra*; *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 109 (2015); *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 430 (2013).

Ahora bien, no es aconsejable dictar sentencia sumaria cuando existe controversia sobre asuntos de credibilidad o sobre aspectos subjetivos como la intención, el propósito mental o la negligencia. *Cruz, López v. Casa Bella y otros, supra*; *Aponte Valentín et al. v. Pfizer Pharm.*, 208 DPR 263, 278 (2021).

La parte que se opone a la solicitud de sentencia sumaria debe refutar los hechos materiales que entienda están en disputa con evidencia sustancial. *Birriel Colón v. Supermercado Los Colobos, supra*; *SLG Fernández-Bernal v. RAD-MAN et al., supra*, págs. 336-337. Ahora bien, si la petición de sentencia sumaria está sustentada con declaraciones juradas u otra prueba, la parte que se opone no puede descansar en meras alegaciones, sino que debe contestar de una forma tan detallada y específica como lo haya hecho la parte promovente. *Birriel Colón v. Econo y otro, supra*; *Ramos Pérez v. Univisión, supra*, pág. 215; Regla 36.3 (c) de Procedimiento Civil, *supra*, R. 36.3 (c). De lo anterior, incluso si no se presenta prueba para controvertir la evidencia presentada, ello no conduce a la concesión automática de una solicitud de sentencia sumaria. *Birriel Colón v. Econo y otro, supra*; *SLG Fernández-Bernal v. RAD-MAN et al., supra,* pág. 337.

Respecto a la oposición a una solicitud de sentencia sumaria, se sostiene que, la Regla 36.3 (b) de Procedimiento Civil, *supra*, R.

36.3 (b), establece que, "[l]a contestación a la moción de sentencia sumaria deberá ser presentada dentro del término de veinte (20) días de su notificación. . .". Por ello, **"[s]i la parte contraria no presenta la contestación a la sentencia sumaria en el término provisto en esta regla, se entenderá que la moción de sentencia sumaria queda sometida para la consideración del tribunal"**. *Íd.*

En *Meléndez González et al. v. M. Cuebas, supra,* el Tribunal Supremo estableció un estándar que este Tribunal de Apelaciones debe emplear al revisar las concesiones o denegatorias de una solicitud de sentencia sumaria.

En primer lugar, el Tribunal de Apelaciones se encuentra en la misma posición que el Tribunal de Primera Instancia al revisar una solicitud de sentencia sumaria, por lo que está llamado a llevar a cabo una revisión *de novo,* de conformidad con la Regla 36 de Procedimiento Civil, *supra,* R. 36. En tal ejercicio, *no se puede considerar evidencia que las partes no presentaron ante el Foro a quo,* y se debe examinar el expediente de la forma más favorable hacia la parte opositora de la moción de sentencia sumaria. *Meléndez González et al. v. M. Cuebas, supra,* pág. 116.

En segundo lugar, el Tribunal apelativo debe revisar que tanto la petición de sentencia sumaria como su oposición cumplan con los requisitos de la Regla 36 de Procedimiento Civil, *supra,* R. 36 y los criterios discutidos en los casos *SLG Zapata- Rivera v. J.F. Montalvo, supra* y *Meléndez González et al. v. M. Cuebas, supra.*

En tercer lugar, el Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia. *Íd.* De haberlos, se debe exponer los hechos materiales en controversia y los incontrovertidos, a tenor con la Regla 36.4 de Procedimiento Civil, *supra,* R. 36.4. Véase *Meléndez González et al. v. M. Cuebas, supra.*

En cuarto lugar, si el Tribunal de Apelaciones determina que no existen hechos materiales en controversia, procederá a revisar si el Foro Primario aplicó correctamente el derecho. *Íd.*, pág. 119.

-B-

"El contrato es el negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones". 31 LPRA sec. 9751. Una vez constituido aplica el principio de *pacta sunt servanda* en que las partes se comprometen a cumplir con lo pactado. *PRFS v. Promoexport*, 187 DPR 42, 52 (2012); *BBPR v. Sunc. Talavera*, 174 DPR 686 (2008). En ese sentido, "[lo] acordado en los contratos tiene fuerza de ley entre las partes, ante sus sucesores y ante terceros en la forma que dispone la ley". 31 LPRA sec. 9754. De esta forma, la contravención de una obligación contractual acarrea exigir el pago de una indemnización o el cumplimiento específico de las cláusulas pactadas. *PRFS v. Promoexport, supra.*

Cónsono con lo anterior, nuestro Tribunal Supremo ha reconocido que la constitución de un reglamento de una asociación privada constituye un contrato entre la asociación y sus miembros. *Asoc. Res. Los Versalles v. Los Versalles*, 194 DPR 258, 266 (2015). Es harto conocido que nuestra jurisdicción rige el principio de la autonomía de la voluntad en la contratación. Este principio le concede amplia libertad de acción a las partes que desean obligarse. *BPPR v. Sucn. Talavera, supra*, a la pág. 693. La aludida norma está recogida en el Artículo 1232 del Código Civil, el cual dispone que "*[l]as partes pueden acordar cualquier cláusula que no sea contraria a las leyes, a la moral o al orden público*". 31 LPRA sec. 9753; *Álvarez de Choudens v. Rivera Vázquez*, 165 DPR 1, 17 (2005); *Irizarry López v. García Cámara*, 155 DPR 713, 725 (2001). Como se sabe, los contratos se perfeccionan desde que las partes manifiestan su consentimiento sobre el objeto y la causa,

obligándose así al cumplimiento de lo expresamente pactado. 31 LPRA sec. 9771. Así pues, las obligaciones contraídas conforme al ordenamiento jurídico tendrán fuerza de ley entre las partes y deben ser cumplidas según estos. 31 LPRA sec. 9754.

Sobre la interpretación de los contratos, es norma reiterada que estos no están sujetos a interpretación cuando sus términos son claros y específicos. *Asoc. Res. Los Versalles v. Los Versalles, supra,* a la pág. 267. El Artículo 354 del Código Civil dispone que "*[s]i los términos de un negocio jurídico bilateral son claros y no dejan duda sobre la intención de las partes, se estará al sentido literal de sus palabras*". 31 LPRA sec. 6342. Ahora bien, en caso de que los términos de un negocio jurídico bilateral sean ambiguos, estos deben interpretarse "*en sentido desfavorable a quien la redactó y en favor de la parte que tuvo menor poder de negociación*". 31 LPRA sec. 6346.

**-III-**

En el caso ante nuestra consideración, la parte apelada presentó una *Solicitud de Sentencia Sumaria* el 30 de julio de 2024. Fundamentó su solicitud en que ni la ley ni el Reglamento le concedían legitimación activa a ACVC y por ello, el TPI no debía concederle los remedios interdictales solicitados. Por el contrario, arguyó que sí procedían los remedios interdictales solicitados a su favor por ser la presidenta de la Directiva. El TPI coincidió —en parte— con la señora Rodríguez Rivera en cuanto a la solicitud de injuction preliminar y permanente presentada por la parte apelante. Razonó el foro *a quo* que ACVC no destituyó a la parte apelada conforme a los requisitos proscritos en el Reglamento. De igual forma, el foro de instancia concluyó que el puesto de tesorero(a) nunca estuvo vacante.

Así las cosas, ACVC acude ante este foro apelativo y nos solicita que revoquemos el dictamen emitido por el TPI el 11 de

septiembre de 2024. La parte apelante alega que el TPI erró al interpretar que las comunidades Villa Capri Court y Caprivillas son Socios de la ACVC con derecho a ser convocados a las reuniones de la ACVC. Particularmente, a la Asamblea Extraordinaria del 19 de mayo de 2024. Alegó también que el TPI erró al no celebrar una vista evidenciaria sin que la parte apelante hubiese tenido a acceso a una grabación donde la señora Latorre Rodríguez renunció a su cargo como tesorera.

Por mandato reglamentario y jurisprudencial, revisamos *de novo* el expediente de la manera más favorable hacia la parte que se opuso a la moción, entiéndase, ACVC. De este modo, cotejamos si existen hechos materiales en controversia y si el TPI aplicó correctamente el derecho a la controversia. *Meléndez González v. M. Cuebas, supra.* Luego de nuestra revisión, acogemos las determinaciones de hechos esbozadas por el TPI y nos encontramos en posición de confirmar la *Sentencia* apelada. Esto responde a que, somos del criterio que no se cometió ninguno de los errores señalados. Nos explicamos.

El Reglamento de la ACVC dispone de entrada que los Socios —*propietarios o inquilinos*— y los visitantes de **Villa Capri, Villa Capri Courts o Caprivillas** —*sectores incluidos siempre que se refiera a la urbanización*— acatarán y cumplirán plenamente todo lo dispuesto en dicho Reglamento.[16] Por su parte, el Art. VI del Reglamento establece la forma de efectuar la separación involuntaria de los Socios de la Directiva. Específicamente, la sección 1 dispone que *"[e]n cualquier Asamblea Ordinaria o Extraordinaria <u>debidamente convocada y constituida</u> se podrá sustituir a un Socio de la Directiva mediante justa causa contando además con el voto mayoritario de los presentes. [...]"*.[17] De otro lado,

---

[16] Véase, apéndice de la parte apelante, pág. 59.
[17] Véase, apéndice de la parte apelante, pág. 78.

el Artículo X del Reglamento dispone que el *quorum* para la Asamblea Ordinaria o Extraordinaria estará constituido por la mayoría simple de *todos los Socios con derecho al voto.*[18] De las precitadas disposiciones se desprende con meridiana claridad que: 1) Villa Capri Courts y Caprivillas forman parte de la ACVC por ser Socios; 2) la Asamblea, ya sea Ordinaria o Extraordinaria, debe estar debidamente convocada y constituida, y 3) que el *quorum* de las Asambleas estará constituido por todos los Socios con derecho al voto.

Una mirada detenida de expediente ante nuestra consideración demuestra que la ACVC no cumplió con los requisitos para la separación involuntaria de un integrante de la Directiva. Específicamente, el requisito de notificación a todos los Socios de la ACVC, incluyendo a Villa Capri Courts y Caprivillas.[19] De manera que, la separación involuntaria de la señora Rodríguez Rivera como presidenta de la Directiva fue contraria al Reglamento y, por lo tanto, inválida.

Ahora bien, tal y como señalamos, este Tribunal se encuentra en la misma posición que el tribunal de instancias al revisar una solicitud de sentencia sumaria de conformidad con la Regla 36 de Procedimiento Civil, *supra,* R. 36. A esos efectos, no se puede considerar evidencia que las partes no presentaron ante el foro sentenciador. Cónsono con ello, debemos examinar el expediente de la forma más favorable hacia la parte opositora de la moción de sentencia sumaria.

Es harto conocido que la parte que se opone a la solicitud de sentencia sumaria *debe refutar los hechos materiales que entienda están en disputa con evidencia sustancial. Birriel Colón v. Supermercado Los Colobos, supra; SLG Fernández-Bernal v. RAD-*

---

[18] *Íd.*
[19] Entrada Núm. 61 de SUMAC, Anejos 8 y 9.

*MAN et al., supra.* (Énfasis suplido). De igual modo, es norma reiterada que si la petición de sentencia sumaria está sustentada con declaraciones juradas u otra prueba, la parte opositora no puede descansar en meras alegaciones, sino que debe contestar de una forma tan detallada y específica como lo haya hecho la parte promovente. *Ramos Pérez v. Univisión, supra.*

Es menester señalar que el hecho de que la parte opositora no presente prueba para controvertir la evidencia presentada, no conduce a la concesión automática de una solicitud de sentencia sumaria. *SLG Fernández-Bernal v. RAD-MAN et al.* No obstante ello, la Regla 36.3 (b) de Procedimiento Civil, *supra*, R. 36.3 (b), establece un término de 20 días para que la parte opositora presente su contestación a la moción de sentencia sumaria. De manera que, *"[s]i la parte contraria no presenta la contestación a la sentencia sumaria en el término provisto en esta regla, se entenderá que la moción de sentencia sumaria queda sometida para la consideración del tribunal"*. *Íd.*

Del expediente ante nuestra consideración surge que la señora Rodríguez Rivera presentó una Solicitud de Sentencia Sumaria el 30 de julio de 2024 que satisface los requisitos establecidos en la Regla 36.3(a) de Procedimiento Civil, *supra*.[20] Sin embargo, ACVC no presentó su oposición. De manera que, no controvirtió de manera detallada y especifica las alegaciones de la parte apelada. Regla 36.3(b), *supra*. En ese sentido, el TPI se encontraba en posición de dictar sentencia sumaria en su contra.

ACVC alega que el TPI erró al no celebrar una vista evidenciaria sin que la parte apelante hubiese tenido a acceso a una grabación donde la señora Latorre Rodríguez renunció a su cargo como tesorera. Recordemos que ACVC no presentó su oposición a la

---

[20] Véase, apéndice de la parte apelante, págs. 350-436.

*Solicitud de Sentencia Sumaria* de la señora Rodríguez Rivera. Por lo que, no controvirtió ninguno de los hechos esenciales alegados por la parte apelada. Hechos que demuestran la invalidez de la separación involuntaria de la señora Rodríguez Rivera como presidenta de la Directiva. Al no contestar su oposición a la *Solicitud de Sentencia Sumaria* de la parte apelada, ACVC no argumentó cómo la grabación impedía que el TPI dictara sentencia sumaria. Máxime, cuando del expediente surge copia certificada de la transcripción de la grabación aludida.[21] Inclusive, la señora Rodríguez Rivera le informó a ACVC por conducto de su representante legal que no tenía en su poder la grabación, sino que estaba en manos de la compañía que realizó la transcripción.[22] No obstante, la parte apelada le informó a la parte apelante que la información de la compañía surgía de la propia transcripción y que su reproducción tenía un costo de $40.00. Además, la señora Rodríguez Rivera se ofreció a cubrir la mitad del costo para que así ambas partes tuvieran copia de la grabación.

Ante este cuadro fáctico y procesal, y por ser el resultado que procede conforme a nuestro ordenamiento, resulta inevitable concluir que la Sentencia apelada es una correcta a base de los hechos materiales indubitados.

**-IV-**

Por los fundamentos antes expuestos, se confirma la Sentencia apelada.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís<br>
Secretaria del Tribunal de Apelaciones

---

[21] Véase, apéndice de la parte apelante, págs. 207-271.
[22] Véase, apéndice de la parte apelante, págs. 342-344.